1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DENISE CORTES,                                    CASE NO. 1:12-cv-00236-AWI-SAB

                Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                         RECOMMENDING THAT PLAINTIFF'S
     v.                                          SOCIAL SECURITY APPEAL BE DENIED

MICHAEL J. ASTRUE, COMMISSIONER     OBJECTIONS DUE WITHIN 14 DAYS
OF SOCIAL SECURITY,

                Defendant.
_____/

       Plaintiff Denise Cortes ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant") denying Plaintiff's claims for Social Security Disability Insurance and Supplemental Security Income benefits. (ECF No. 1.) The matter was submitted to the undersigned magistrate judge for findings and recommendations to the District Court. For the reasons set forth below, the undersigned recommends that the final decision of Defendant be affirmed and that Plaintiff's appeal be denied.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

       Plaintiff applied for Social Security benefits on March 13, 2009. (AR 77.) Plaintiff's application was initially denied on October 14, 2009 and then denied upon reconsideration on March

---

      [1]Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 13.)

4, 2010.  (AR 93-97, 88-92.)  Plaintiff requested and received a hearing before Administrative Law

Judge Laura Speck Havens ("the ALJ"), which took place on December 1, 2010.  (AR 41-59.)  On

March 2, 2011, the ALJ found that Plaintiff was not disabled. (AR 13-38.)  The Appeals Council

declined Plaintiff's request for review on December 15, 2011.  (AR 1-6.)

A.      **Plaintiff's Hearing Testimony**

Plaintiff was born on March 17, 1968.  (AR 44.)  Plaintiff suffers from diabetes, carpal tunnel

syndrome, hearing loss, asthma, lumbar disc disease, and depression.  (AR 45.)  Plaintiff claimed

a disability onset date of March 13, 2009.  (AR 45.)  When asked if anything happened around that

time that triggered her inability to work, Plaintiff cited chronic back pain.  (AR 45.)

Plaintiff has a high school diploma and completed approximately a year of college. (AR 44-

45.)  Plaintiff can read and perform simple adding and subtracting.  (AR 45.)

Plaintiff previously worked as a tax preparer in 2008 and 2009.  (AR 45.)  Plaintiff worked

as a care giver from 1997 to 2007.  (AR 45.)  Plaintiff stopped working as a care giver due to her

lower back pain and reported that her "[d]octor had me stop."  (AR 50.)  After Plaintiff's doctor told

her to stop in 2005, Plaintiff worked fewer hours providing home health care for her mother.  (AR

50.)

Plaintiff lives in a house with her husband and three children (ages 15, 18 and 21).  (AR 45-

46.) Plaintiff is able to dress and bathe herself without help.  (AR 46.)  Plaintiff does not do chores

around the house.  (AR 46.)  Plaintiff goes grocery shopping.  (AR 46.)  Plaintiff also crochets for

fifteen minutes at a time.  (AR 46-47.)  After fifteen minutes, Plaintiff has to rest her hands.  (AR

51.)  Plaintiff finds it progressively harder to use her hands as the day goes on.  (AR 51.)  Plaintiff

watches television for approximately six hours a day.  (AR 47.)  Plaintiff drove herself to the

hearing, which was a 40 minute drive.  (AR 47.)  Plaintiff can stand for five minutes at a time, or

walk for ten minutes. (AR 49.)  Plaintiff uses a walker, which was prescribed by a doctor.  (AR 49.)

Plaintiff can sit for ten minute at a time.  (AR 49.)  When questioned by her attorney, who noted that

Plaintiff had been sitting for ten minutes at the hearing, Plaintiff stated that after ten minutes she

starts to feel pain, but that she could continue to sit for five more minutes before the pain would

force her to get up.  (AR 51.)  Plaintiff can lift five pounds.  (AR 49.)

1　　　　Plaintiff suffers from stabbing, numbing pain in her lower back.  (AR 49.)  Plaintiff reported

2　that the pain occurs "[a]ll the time" and reported that the pain, without medication, is "a ten" on a

3　scale of one to ten.  (AR 49.)  The pain is "an eight" with medication.  (AR 50.)  Plaintiff was told

4　by her doctor that the pain was associated with her weight.  (AR 51-52.)  Plaintiff was also told that

5　she would need lumbar surgery for the pain, but that she could not receive the surgery until after she

6　lost weight.  (AR 52.)  Plaintiff has difficulty exercising because it requires bending, she feels pain

7　in her back and her knees feel like they are going to give out.  (AR 53.)

8　　　　Plaintiff also reported that her depression prevents her from working.  (AR 50.)  Plaintiff is

9　"depressed all day" and she does not want to get out of bed and "don't want to do nothing."  (AR

10　50.)

11　　　　Plaintiff also reported having trouble sleeping.  (AR 47-48.)  Plaintiff reported sleeping an

12　average of four hours per day.  (AR 48.)  However, when asked by her attorney, Plaintiff later stated

13　that she sleeps "okay" with the medicine she takes to sleep.  (AR 53.)

14　　　　Plaintiff's asthma gets worse when she is exposed to fumes and dust.  (AR 53.)

15　　　　Plaintiff's medications include Abilify, Norvasc, Aspirin, Baclofen, Bupropion, Wellbutrin,

16　Colace, Lasix, Gabapentin, Isosorbide, Lamotrigine, Synthroid, Ativan, Glucophage, Nitrostate,

17　Prilosec, Plavix, Pravastatin sodium, and an inhaler.  (AR 48.)  Plaintiff was recently taken off

18　Plavix.  (AR 53.)  Plaintiff sees a doctor every two weeks and sees a counselor every week.  (AR 48-

19　49.)

20　　　**B.　　Plaintiff's Medical Record**

21　　　　Plaintiff's relevant medical history is summarized below.[2]

22　　　　Plaintiff received elective gastric bypass surgery in October 2005 from Dr. Antonio K.

23　Coirin, M.D.  (AR 292-294.)  Plaintiff's postoperative diagnoses included diabetes mellitus,

24　gastroesophageal reflux disease, hyperlipidemia, dyspnea on exertion and morbid obesity.  (AR 293.)

25

26　　　　　[2] Due to the considerable length of Plaintiff's medical record, the Court limits its summary to the records
27　pertaining to the issues raised in Plaintiff's brief, namely Plaintiff's bilateral carpal and cubital tunnel syndromes and
　　Plaintiff's reasoning level.  Although not set forth in detail below, Plaintiff's medical record also includes substantial
28　records pertaining to diagnoses and treatment received for Plaintiff's lower back pain, chest and heart issues, and
　　obesity.

On April 15, 2009, Plaintiff was seen by Dr. Lin Ma, M.D. for a consultation regarding a herniated disc. (AR 334-338.) At the consult, Plaintiff reported that, on July 29, 2004, she bent over at work and heard a popping sound. (AR 334.) When she got up, she had severe back pain radiating down the left leg. (AR 334.) Plaintiff was diagnosed with a lumbar strain. (AR 334.) She stated that standing after five minutes makes the pain worse "and after she sits down for 20 minutes, the pain is better." (AR 334.) Plaintiff also reported depression (after her 17 year old son died in a car accident five years prior), headache, fever, shortness of breath, poor appetite, weakness, lack of taste, hearing loss, skin rash, double vision, tremors, ringing in ears, chest pain, neck pain, lack of coordination, blurred vision, forgetfulness, difficulty swallowing and dizziness. (AR 335.) Dr. Ma performed a fluroscopically-guided L4-L5 lumbar epidural steroid injection on May 13, 2009. (AR 414.)

On August 6, 2009, Plaintiff was seen by Dr. Prithvi Shankar, M.D. for a consultative internal medicine disability examination. (AR 415-417.) Plaintiff reported that lower back pain and carpal tunnel syndrome were the biggest problems limiting her ability to work. (AR 415.) Plaintiff told Dr. Shankar that she has not seen significant improvement in her lower back pain, despite being seen by doctors and receiving multiple injections and epidurals. (AR 415.) Dr. Shankar noted that Plaintiff appeared to be in discomfort after sitting for long periods of time and Plaintiff told Dr. Shankar that she would stand during the examination. (AR 415.) Plaintiff was constantly moving to minimize her lower back discomfort. (AR 415.) With respect to her carpal tunnel syndrome, Dr. Shankar noted that Plaintiff "has had release of same bilaterally and does not seem to have any significant limitation in her overall functional capacity." (AR 416.) Dr. Shankar's functional capacity assessment found that Plaintiff could sit for 2-3 hours per day with routine breaks, stand or walk for 2-3 hours a day with routine breaks, lift and carry 20 pounds frequently and 25 pounds occasionally, has no limitations in the use of her arms or hands, is unable to perform postural activities of stooping, kneeling, crawling or squatting due to lower back pain, and ambulates with the assistance of a cane or walker. (AR 416-417.)

On August 9, 2009, Plaintiff received a psychiatric evaluation from Dr. Manolito Castillo, M.D. (AR 418-420.) Plaintiff's chief complaint was lower back pain. (AR 418.) Plaintiff stated

that she could not pick up more than five pounds and could only walk a few feet. (AR 418.) She had been suffering from depression due to the death of her son, the death of her mother in 2007, and problems with her children. (AR 418.) Plaintiff's 17 year old daughter was pregnant, 13 year old son had a heart condition, and oldest son was incarcerated and recently released. (AR 418.) Plaintiff also reported trouble sleeping (3 hours per day), poor appetite, and trouble with concentration and memory. (AR 418.) Plaintiff was not currently receiving mental health services, but did see a counselor for about a year after her son died in 2002. (AR 418.) Dr. Castillo concluded that Plaintiff "did well on assessment" and Dr. Castillo was "unable to identify any significant mental limitations at present." (AR 420.)

On September 10, 2009, Dr. R. Fast, M.D. authored a physical residual functional capacity assessment for Plaintiff. (AR 446-451.) Dr. Fast concluded that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk 2 hours a day with an assistive device, sit 6 hours a day, and push or pull without limitation. (AR 447.) Dr. Fast recommended a sedentary RFC with a cane for pain relief. (AR 448.) Dr. Fast further concluded that Plaintiff could climb, balance, stoop, kneel, crouch, or crawl occasionally, but never climb ladders, ropes or scaffolds. (AR 449.) Dr. Fast determined that Plaintiff had no manipulative limitations in terms of reaching, handling, fingering or feeling. (AR 449.) Dr. Fast concluded that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (AR 450.)

On September 23, 2009, Dr. Robert Liss, PhD authored a psychiatric review which concluded that Plaintiff's schizophrenia, paranoia and other psychotic disorders were not severe and her affective disorders were not severe. (AR 452.) Dr. Liss reported no limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace, or episodes of decompensation. (AR 460.)

On October 25, 2009, Plaintiff went to the emergency room at the Emanuel Medical Center in Turlock, California  due to recurrent left-sided weakness and tingling. (AR 631.) Plaintiff reported tingling and numbness in the left hand, which had resolved on its own by the time Plaintiff was admitted. (AR 631.)

On November 3, 2009, Plaintiff was seen by Dr. Jeffrey R. Levin, M.D. (AR 618-619.) Dr. Levin noted that Plaintiff's "Tinel sign and Phalen sign are positive at both wrists and both elbows. Thenar and hypothenar weakness are seen bilaterally. There is atrophy seen bilaterally." (AR 618.) Dr. Levin also noted a history of mild cognitive problems, but "[t]hese were not evaluated in detail today." (AR 619.) Dr. Levin's "impressions" noted "[c]arpal and cubital tunnel syndrome bilaterally." (AR 620.)

On February 24, 2010, Dr. R. Paxton, M.D. authored a psychiatric review which concluded that Plaintiff's limitations included mild restrictions in activities of daily living and mild restrictions in maintaining concentration, persistence and pace. (AR 703-713.) Dr. Paxton also authored a Mental Residual Functional Capacity Assessment that concluded that Plaintiff was moderately limited in the ability to understand and remember detailed instructions and moderately limited in the ability to carry out detailed instructions. (AR 714-716.) Dr. Paxton further concluded that Plaintiff:

- is able to understand and remember work locations and procedures of a simple, routine nature involving 1-2 step job tasks and instructions;

- is able to maintain concentration and attention in two hour increments;

- is be able to sustain eight hour work schedules;

- is able to accept direction from supervisors;

- is able to remain socially appropriate with co-workers and the public; and

- is able to travel, avoid workplace hazards, respond to change and set realistic goals independently.

(AR 716.)

On January 12, 2011, Plaintiff received a comprehensive orthopedic evaluation from Dr. Dale H. Van Kirk, M.D. (AR 1075-1079.) Dr. Van Kirk's evaluation included examination of Plaintiff's wrist joints and finger/thumb joints. (AR 1078.) Dr. Van Kirk's diagnosis was chronic lumbosacral musculoligamentous strain/sprain associated with degenerative disc disease. (AR 1078.) Dr. Van Kirk did not mention Plaintiff's carpal tunnel syndrome. Dr. Van Kirk concluded that Plaintiff had "no manipulative limitations." (AR 1079.) Dr. Van Kirk also authored a separate Medical Source Statement of Ability to Do Work Related Activities (Physical). (AR 1080-1086.) Under "use of

6

hands," Dr. Van Kirk noted that Plaintiff could use her hands "continuously" for reaching, handling, fingering, feeling, and pushing/pulling.  (AR 1082.)

### C.    Vocational Expert Testimony

George Meyers testified as a vocational expert at the hearing before the ALJ on December 1, 2010.  Mr. Meyers identified Plaintiff's prior work as a home attendant (DOT number 354.377-014, medium, semi-skilled, SVP: 3) and tax preparer (DOT number 219.362-070, sedentary, semi-skilled, SVP: 4).  (AR 57.) Mr. Meyers opined that Plaintiff could no longer perform these prior jobs given her current age, education, work history, and restrictions.  (AR 57.)   These restrictions included:

- sit for six hours out of an eight hour day;
- stand for two hours out of an eight hour day;
- walk two hours out of an eight hour day;
- use a walker for ambulation;
- occasionally lift and carry twenty pounds;
- frequently lift and carry ten pounds;
- occasionally climb stairs;
- never climb ladders;
- occasionally balance, stoop, kneel, crouch and crawl;
- must avoid concentrated exposure to dust, fumes and smoke; and
- understand, remember and carry out simple job instructions only.

(AR 57.)

Mr. Meyers was then asked to opine whether other jobs exist for a person with the same age, education, work history and restrictions.  (AR 57.)  Mr. Myers opined that jobs do exist, and include addresser (DOT number 209.587-010, sedentary, unskilled, SVP: 2), order clerk (DOT number 209.567-014, sedentary, unskilled, SVP: 2) and charge account clerk (DOT number 205.367-014, sedentary, unskilled, SVP: 2).  (AR 57.)  When asked by Plaintiff's attorney to change the terms of the hypothetical to restrict sitting to two to three hours per day and standing or walking to two to three hours per day, Mr. Myers opined that Plaintiff would not be able to perform the available jobs

on a full-time basis.  (AR 58.)

**D.    The ALJ's Findings**

The ALJ issued her decision on March 2, 2011, finding Plaintiff to be not disabled.  (AR 16-32.)  The ALJ made the following findings:

- •     Plaintiff meets the insured status requirement through March 31, 2014;

- •     Plaintiff has not engaged in substantial gainful activity since March 13, 2009;

- •     Plaintiff has the following severe impairments: lumbar disc disease, obesity, nonocclusive coronary artery disease, asthma and depression;

- •     Plaintiff does not have an impairment or list of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

- •     Plaintiff has the residual functional capacity to perform sedentary work and can lift/carry 10 pounds occasionally and less than 10 pounds frequently, can stand/walk for two hours per day with regular breaks and the use of an assistive device, can sit for six hours a day with regular breaks, cannot climb ladders, ropes or scaffolds, is limited to occasionally performing all other postural activities, is restricted from concentrated exposure to fumes, odors, dusts, gases and poor ventilation and is limited to simple repetitive tasks;

- •     Plaintiff is unable to perform any past relevant work; and

- •     Considering the Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

Further details regarding the ALJ's analysis are set forth in the Court's analysis below.  See discussion, infra, Part III.

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.   42 U.S.C.  § 405(g).   The Court "reviews the

1    Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

2    disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.

3    Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla,

4    but less than a preponderance.   Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal

5    quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable

6    mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402

7    U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not

8    affirm simply by isolating a specific quantum of supporting evidence."   Hill, 698 F.3d at 1159

9    (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

10                                         **III.**

11                          **DISCUSSION AND ANALYSIS**

12        Plaintiff challenges the ALJ's analysis with respect to two issues:  First, Plaintiff contends

13   that the ALJ erred by concluding that Plaintiff's bilateral carpal and cubital tunnel syndromes

14   ("CTS") were non-severe impairments.   (Pl.'s Opening Brief ("Pl.'s Brief") 3:6-5:13.)   Second,

15   Plaintiff contends that the ALJ erred by adopting the vocational expert's ("VE") opinion that

16   Plaintiff could perform certain jobs that are beyond Plaintiff's reasoning level.  (Pl.'s Brief 5:14-

17   7:18.)

18        **A.    The ALJ's Step Two Analysis Concerning Bilateral Carpal and Cubital Tunnel
              Syndromes**
19

20        Plaintiff argues that the ALJ erred by concluding, at step two of her analysis, that Plaintiff's

21   CTS was non-severe.  (Pl.'s Brief 3:6-5:13.)   Specifically, Plaintiff disputes this conclusion by

22   pointing to her own testimony, stating that she can only crochet for fifteen minutes at a time, as

23   evidence that the condition was severe. (Pl.'s Brief 4:10-11.) Plaintiff argues that the ALJ erred by

24   discrediting Plaintiff's testimony regarding her ability to crochet.  (Pl.'s Brief 4:15-26.)

25        1.    Step Two Of The Sequential Analysis

26        Step two of the disability determination, also known as the "severity step," involves the

27   ALJ's determination of whether or not the Plaintiff has a severe impairment or a combination of

28   impairments which severely limit their physical or mental ability to do basic work activities.   See

1   20 C.F.R. §§ 404.1520(c), 416.920(c).   Stated conversely, an impairment or combination of

2   impairments is not severe if it does not significantly limit a claimant's physical or mental ability to

3   do basic work activities.  20 C.F.R. § 1521(a); Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir.

4   2001).  Basic work activities include physical functions such as walking, standing, sitting, lifting,

5   pushing, pulling, reaching, carrying or handling.  20 C.F.R. § 1521(b)(1).

6           2.      The ALJ Properly Concluded That Plaintiff's CTS Was Non-Severe

7       The ALJ concluded that Plaintiff's CTS was non-severe.  The ALJ noted that:

8               [o]ther than an isolated complaint, the treatment records reflect the
                claimant did not receive regular follow-up care for allegations of
9               carpal tunnel syndrome even though she received regular treatment
                for other impairments.  This is inconsistent with the alleged severity
10              of this impairment.    Due to lack of objective evidence, the
                undersigned finds this impairment nonsevere.

11

12      Plaintiff argues that the ALJ erred by failing to specifically address Plaintiff's claims

13  concerning her limited hand use, as demonstrated by her limited ability to crochet. (Pl.'s Brief 4:21-

14  24.)  Plaintiff is incorrect in this regard.  The ALJ noted that Plaintiff's testimony regarding her

15  limited ability to crochet conflicted with the objective evidence in the record.  (AR 22.)  Plaintiff's

16  medical record included opinions from three physicians who concluded that Plaintiff had no

17  limitations in the use of her hands.  On August 6, 2009, Dr. Shankar opined that Plaintiff had no

18  limitations in the use of her arms or hands.  (AR 416-417.)  On September 10, 2009, Dr. Fast opined

19  that Plaintiff had no manipulative limitations in terms of reaching, handling, fingering or feeling.

20  (AR 449.)  On January 12, 2011, Dr. Van Kirk opined that Plaintiff had no manipulative limitations

21  and could use her hands "continuously."  (AR 1079, 1082.)

22      Substantial evidence supports the ALJ's determination that Plaintiff's CTS was not severe

23  enough to include in Plaintiff's combination of impairments at step two.  The ALJ's determination

24  was unanimously supported by all the physicians to opine on the issue.  Moreover, the ALJ properly

25  discounted the credibility of Plaintiff's subjective testimony regarding the severity of her condition

26  based on the fact that Plaintiff sought extensive medical treatment for her other health conditions yet

27  never actively sought treatment for her CTS.

28

3.      The ALJ Properly Considered Plaintiff's CTS At Steps Three Through Five

Even though the ALJ did not include Plaintiff's CTS in the combination of impairments at step two, the ALJ properly considered Plaintiff's CTS at steps three through five. Accordingly, any error by the ALJ at step two would have been harmless because Plaintiff fails to demonstrate prejudice at steps three through five. See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054-55 (9th Cir. 2006) (harmless error where mistake was nonprejudicial to the claimant or irrelevant to the disability conclusion). Normally, the party seeking review of administrative proceedings bears the burden of explaining how an erroneous ruling caused harm. Shinseki v. Sanders, 556 U.S. 396, 409-410 (2009).

As discussed above, step two involves the ALJ's determination of whether the claimant's impairment or combination of impairments is "severe." However, if the combination is found to be severe at step two, it is immaterial whether a particular impairment is treated by the ALJ as "within" that combination of severe impairments because, after the step two analysis, "'all medically determinable impairments must be considered in the remaining steps of the sequential analysis.'" Hill, 698 F.3d at 1161 (quoting Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007)) (emphasis added).

Plaintiff failed to bear her burden of explaining how any error by the ALJ caused harm. Plaintiff merely cites Hill for the proposition that the failure to consider a particular impairment may render the residual functional capacity determination incomplete, flawed or unsupported by the evidence in the record. (Pl.'s Brief 3:24-27.) However, Hill also states that the ALJ must take into account all medically determinable impairments regardless of whether they were "left out" during the step two analysis. There is no indication that the ALJ erred, as the ALJ properly considered Plaintiff's CTS when evaluating Plaintiff's residual functional capacity ("RFC"). The ALJ reviewed and considered the opinions of Dr. Shankar, who stated that Plaintiff had no significant limitations related to her CTS. (AR 28.) The ALJ also discussed Plaintiff's subjective testimony regarding her limited ability to crochet in light of her CTS. (AR 21-23.) Accordingly, even if the ALJ erred at step two by failing to include CTS in the "combination" of impairments, such error was harmless. See Stout, 454 F.3d at 1054-55.

1    Based on the foregoing, the Court finds that the ALJ's analysis of Plaintiff's CTS was proper

2    and the ALJ's conclusion was supported by substantial evidence.

3    **B.    The ALJ's Step Five Treatment of VE Testimony**

4    Plaintiff argues that the ALJ erred at step five of the analysis by adopting the vocational

5    expert's ("VE") opinion that Plaintiff could work as an addresser, order clerk or charge account

6    clerk. (Pl.'s Brief 5:14-7:18.)   Plaintiff argues that the VE's testimony was flawed because it was

7    inconsistent with the description of these jobs in the Dictionary of Occupational Titles ("DOT").

8    (Pl.'s Brief 5:21-7:4.)

9    1.    Step Five Of The Sequential Analysis

10   "At the fifth step of the sequential analysis, the burden shifts to the Commissioner to

11   demonstrate that the claimant is not disabled and can engage in work that exists in significant

12   numbers in the national economy." Hill, 698 F.3d at 1161 (citations omitted). "The ALJ may meet

13   his burden at step five by asking a vocational expert a hypothetical question based on medical

14   assumptions supported by substantial evidence in the record and reflecting all the claimant's

15   limitations, both physical and mental, supported by the record." Id.

16   Evidence provided by a VE generally should be consistent with the DOT. See Massachi v.

17   Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  In Massachi, the Ninth Circuit adopted the procedural

18   requirements set forth in SSR 00-4p, which states that the ALJ has an affirmative responsibility to

19   ask about any possible conflict between the VE's testimony and the information provided in the

20   DOT. Id. at 1152. Accordingly, the ALJ "'will ask' the vocational expert 'if the evidence he or she

21   has provided' is consistent with the Dictionary of Occupational Titles and obtain a reasonable

22   explanation for any apparent conflict." Id. at 1153-53 (emphasis in original).

23   If the ALJ fails to ask whether the VE's testimony conflicts with the DOT, or fails to inquire

24   whether there is a reasonable explanation for the conflict, the matter may be remanded so that the

25   ALJ can perform the appropriate inquiries.  Id. at 1153-54.  However, the matter will not be

26   remanded if the error was harmless. See Bordbar v. Astrue, 475 Fed. Appx. 214, 215 (9th Cir. 2012)

27   (error was harmless because record showed that claimant could perform the jobs identified by the

28   VE).

2.      Plaintiff Could Perform Level-Two Reasoning Level Jobs

Here, the VE was asked to identify jobs that could be performed by Plaintiff given her current age, education, work history and restrictions.  (AR 57-58.)   The RFC restrictions/limitations applicable to Plaintiff included, among other things, jobs that only involve simple job instructions. (AR 57.)  The VE testified that Plaintiff could work as an addresser, order clerk or charge account clerk.  (AR 57.)

Under the DOT, an addresser requires a "Level-Two" reasoning level and an order clerk or charge account clerk requires a "Level-Three" reasoning level.  (Pl.'s Brief 5:16-20.)  The DOT's description of Level-One, Level-Two and Level-Three reasoning levels is as follows:

> 01 LEVEL REASONING DEVELOPMENT Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> 02 LEVEL REASONING DEVELOPMENT Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> 03 LEVEL REASONING DEVELOPMENT Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

Dictionary of Occupational Titles, Appendix C, § III.

Plaintiff argues that it was improper for the VE to opine that Plaintiff could perform any job beyond those that require an Level-One reasoning level because Level-One is the only reasoning level that mentions "simple" instructions.  (Pl.'s Brief 6:10-7:4.)

Cases throughout this circuit have struggled to reconcile conflicts between the limitations described in a claimant's RFC and the job requirements described in the DOT.  See, e.g., Gill v. Astrue, No. 3:11-cv-01350-BR, 2013 WL 145814, at *7 (D. Or. Jan. 14, 2013); Hamlett v. Astrue, No. 11-03818-JEM, 2012 WL 469722, at *4 (C.D. Cal. Feb. 14, 2012) (and cases cited therein); Adams v. Astrue, No. C 10-2008 DMR, 2011 WL 1833015, at *6-7 (N.D. Cal. May 13, 2011); Barrios v. Astrue, No. 1:09-cv-01100 GSA, 2010 WL 3825684, at * 7 (E.D. Cal. Sept. 28, 2010); Tudino v. Barnhart, No. 06-CV-2487-BEN (JMA), 2008 WL 4161443, at *10-11 (S.D. Cal. Sept.

1   5, 2008); Riggs v. Astrue, No. C07-5242RJB-KLS, 2008 WL 1927337, at *14-20 (W.D. Wash. Apr.

2   25, 2008);  Meissl v. Barnhart, 403 F. Supp. 2d 981, 983-984 (C.D. Cal. 2005).  These cases

3   addressed the same issue presented here, namely whether a simple instruction limitation in a RFC

4   is compatible with jobs requiring Level-Two or higher reasoning levels.

5       Most courts in this Circuit have held that a "simple" instruction limitation does not conflict

6   with a VE's opinion that a claimant can perform Level-Two reasoning level work. See, e.g., Hackett

7   v. Barnhart, 395 F.3d 1168, 1175 (10th Cir. 2005) ("level-two reasoning appears more consistent

8   with  Plaintiff's  RFC  [for  simple  and  routine  work  tasks]");  Hamlett, 2012 WL 469722, at *4

9   ("simple repetitive tasks limitation has been held consistent with ... Reasoning Level 2"); O'Connor

10  v. Astrue, No. C-09-01508 JCS, 2010 WL 3785433, at *11 (N.D. Cal. Sept. 27, 2010) ("district

11  courts in this Circuit have concluded that level two positions in the DOT are consistent with an RFC

12  for 'simple, repetitive labor.'"); Tudino, 2008 WL 4161443, at *11 ("Level-two reasoning appears

13  to be the breaking point for those individuals limited to performing only simple repetitive tasks");

14  Meissl, 403 F. Supp. 2d at 984 (limitation to simple tasks consistent with level-two reasoning); but

15  see Gill, 2013 WL 145814, at *7 (case remanded to ALJ to determine whether RFC limited to

16  "simple and routine tasks" is compatible with level 2 reasoning).  The Court agrees with these cases

17  and finds that the ALJ did not err in her consideration of the VE's testimony.

18      As recognized in the above-cited cases, it is difficult to compare the imprecise verbiage used

19  in RFCs and the imprecise verbiage used in the DOT.  See Meissl, 403 F. Supp. 2d at 984 (no "neat,

20  one-to-one parallel exists between [RFC limitations and DOT reasoning levels]").  For example, in

21  Meissl, the claimant argued that a "simple" instruction RFC limitations foreclose the possibility of

22  performing Level-Two reasoning level jobs because the word "simple" appears in the DOT's

23  description for the Level-One reasoning level ("carry out simple one- or two-step instructions") but

24  is absent in the description for the Level-Two reasoning level ("carry out detailed but uninvolved

25  written or oral instructions").  Id. at 983-84  However, the Level-Two description also qualifies the

26  instructions as "uninvolved," which the Meissl court seized upon in reaching the conclusion that a

27  claimant who can only perform simple instructions is not foreclosed from performing Level-Two

28  reasoning level work.  Id. at 984-85.

1    Moreover, in this particular case, substantial evidence supports the ALJ's analysis because,

2  the ALJ expressly asked the VE whether his testimony conflicted with the DOT.  (AR 57-58.)

3  Accordingly, the ALJ satisfied the requirement set forth in SSR 00-4p and Massachi, which requires

4  ALJ to inquire whether a conflict exists.  In the cases cited above, the ALJ failed to ask the VE

5  whether there was a conflict, or the VE testified that there was a conflict and the ALJ failed to further

6  investigate.  See Hackett, 395 F.3d at 1175; Gill, 2013 WL 145814; Hamlett, 2012 WL 469722, at

7  *5; Adams, 2011 WL 1833015, at *5; Barrios, 2010 WL 3825684, at *6-7; O'Connor, 2010 WL

8  3785433, at *11; Tudino, 2008 WL 4161443, at *9-11; Riggs, 2008 WL 1927337, at *14-16;

9  Meissl, 403 F. Supp. 2d at 983-984.  This distinguishing factor is particularly relevant since, given

10  the imprecise verbiage found in the DOT and in RFC limitations, the testimony of a VE is especially

11  probative in determining whether a particular RFC limitation is compatible with a corresponding

12  DOT reasoning level.  The VE is in a better position to assess the nuances in the RFC language and

13  the DOT, as well as incorporate additional details regarding Plaintiff's age, education and work

14  history into the analysis.  Thus, the VE's testimony that there was no conflict constitutes substantial

15  evidence supporting the ALJ's conclusion that Plaintiff could perform the identified jobs.[3]

16    Accordingly, the Court finds that the ALJ's conclusion that Plaintiff could perform work as

17  an addresser, an Level-Two reasoning level job under the DOT, was supported by substantial

18  evidence.

19    3.    Plaintiff's Ability To Work As An Addresser Is Sufficient To Support The ALJ's
           Conclusion
20

21    It is unnecessary to address the ALJ's conclusion regarding Plaintiff's ability to work as an

22  order clerk or charge account clerk because any error would have been harmless.  See Stout, 454

23  F.3d at 1054-55.  Even if Plaintiff could not work as an order clerk or charge account clerk, the work

24  _____

25    [3]Notably, Plaintiff had the opportunity to ask the VE about any potential conflict between his testimony and
     the DOT, but failed to do so.  Immediately after the ALJ asked the VE whether his testimony was consistent with the
26  DOT, the ALJ allowed Plaintiff's attorney to question the VE.  (AR 57-58.)  Plaintiff did not ask a single question
     regarding the simple instruction limitation in the RFC or the DOT reasoning levels.  However, per Sims v. Apfel,
27  530 U.S. 103, 112 (2000), the doctrine of issue exhaustion does not apply to Social Security appeals and, therefore,
     plaintiffs are permitted to raise issues on appeal to the district court that they neglected to pursue at the
28  administrative level.  Nonetheless, the optimal time for Plaintiff to present the issue was at the administrative level,
     where the ALJ was not limited by the "substantial evidence" standard of review.

as an addresser was sufficient to support the conclusions that (1) Plaintiff could perform a job that existed in significant numbers in the national or regional economy, and (2) therefore, Plaintiff was not disabled.

The VE further testified that 12,000 addresser jobs exist within California. (AR 57.)  There is no bright-line rule within this Circuit for what constitutes a "significant number" of jobs.  Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012).  However, the "significant number" of jobs may be based either on number jobs available regionally or nationally.  Id.  In Barker v. Secretary of Health Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989), the Ninth Circuit held that "1,266 jobs [in the local economy] are within the parameters of 'significant numbers.'"  In Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986), 3,750 to 4,250 jobs was sufficient to support the ALJ's conclusion that the claimant was capable of performing jobs that exist in significant numbers.  However, a job with only 135 in the region and 1,680 across the nation cannot support a "significant numbers" conclusion.  Beltran, 700 F.3d at 389-90.

Following the holdings in Barker and Martinez, the Court finds that 12,000 jobs within California constitutes a "significant number" of addresser jobs.  Accordingly, substantial evidence supported the ALJ's conclusion that Plaintiff was capable of performing a job that existed in significant numbers in the national or regional economy.

4.    Plaintiff's Walker Did Not Prevent Her From Working As An Addresser

Plaintiff's final argument is that the ALJ erred by failing to properly account for Plaintiff's walker when determining that Plaintiff could work as an addresser.  (Pl.'s Opening Brief 7:5-18.)  Plaintiff argues that an addresser requires gathering and arranging material to be typed.  Plaintiff contends that it would be impossible to "gather" materials because she uses a walker.  (Pl.'s Opening Brief 7:9-10.)

The record clearly demonstrates that Plaintiff's walker was taken into consideration by the VE and the ALJ.  The ALJ specifically instructed the VE to take Plaintiff's assistive device into account when determining what jobs Plaintiff could perform.  (AR 57.)  Moreover, when given the opportunity to question the VE, Plaintiff's attorney specifically asked if the jobs identified by the VE could be performed by someone who uses a walker.  (AR 58.)  The VE responded that he took

16

1   Plaintiff's walker into account.  (AR 58.)

2          There is additional evidence in the record supporting the ALJ's conclusion that Plaintiff

3   could perform the "gathering" tasks required of an addresser.  Plaintiff testified that she goes grocery

4   shopping (AR 46), which normally involves "gathering."  Plaintiff also testified that she crochets,

5   which normally involves gathering of crochet materials.  Accordingly, the record contains substantial

6   evidence supporting the conclusion that Plaintiff is capable of performing the "gathering" tasks

7   associated with work as an addresser.

8          Based on the foregoing, the Court finds that substantial evidence supports the conclusion that

9   Plaintiff is capable of performing work as an addresser and a significant number of addresser jobs

10  exist in the regional and national economy.  Accordingly, the ALJ's conclusion that Plaintiff is not

11  disabled is proper and supported by substantial evidence.

12                                                    **IV.**

13                          **CONCLUSION AND RECOMMENDATION**

14         Based upon the foregoing, the Court finds that the ALJ's analysis is based on the proper legal

15  standards and the ALJ's conclusions are supported by substantial evidence.  Accordingly, the Court

16  RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

17  Social Security be DENIED and that JUDGMENT be entered in favor of Defendant Michael J.

18  Astrue and against Plaintiff Denise Cortes.

19         These findings and recommendations will be submitted to the Honorable Anthony W. Ishii

20  pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served

21  with these findings and recommendations, the parties may file written objections with the court.  The

22  document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

23  The parties are advised that failure to file objections within the specified time may waive the right

24  to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

25         IT IS SO ORDERED.

26  Dated:   **February 4, 2013**              **/s/ Stanley A. Boone**
                                                    UNITED STATES MAGISTRATE JUDGE

27

28

                                                    17